UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| JIMMY ANFIELD, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | Case No. CV608-069 |
| | ) | [CR605-018] |
| UNITED STATES, | ) | |
| Respondent. | ) | |

### REPORT AND RECOMMENDATION

Jimmy Anfield moves this Court, over the government's opposition, to vacate his conviction and sentence under 28 U.S.C. § 2255. CV608-069, doc. 1 & 4. Anfield contends that his trial counsel was ineffective and that the sentencing judge should have recused himself based on racial bias. Doc. 1 at 3-8.

### I. BACKGROUND

Anfield pled guilty in this Court and later appealed his convictions for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), and possession of firearms and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). *United States v. Anfield*, 237

F. App'x 538, 538 (11th Cir. 2007). Before this Court, Anfield expressed dissatisfaction with his appointed counsel, Martha Kirkland, and she moved for a continuance because Anfield refused to communicate with her. CR605-018, doc. 25 at 1-2. He had planned to use retained counsel but never found the money to retain him; nor, however, did he ever seek to fire Kirkland. The district judge refused to continue the trial, emphasizing that Anfield had put himself in that position by refusing to work with Kirkland. Anfield subsequently pled guilty. CR605-18, doc. 26 at 2; CR605-18, doc. 42 at 16-18, 46-49.

On direct appeal, Anfield argued that (1) the district judge abused his discretion in denying his motion for a continuance and for failing to inquire into the competency of his appointed counsel (asserting that his continuance motion "alerted" this Court to his dissatisfaction with his appointed counsel); and (2) the judge failed to ensure that his guilty plea was knowing and voluntary, as required by Fed. R. Crim. P. 11. *Anfield*, 237 F. App'x at 539-40. The Eleventh Circuit rejected those arguments on the merits and affirmed. *Id.* On the continuance motion, it noted that district courts have broad discretion in such matters, and only "an unreasoning and arbitrary insistence upon expeditiousness in the face of

a justifiable request for delay violates the right to assistance of counsel."

*Id.* (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983). Here,

> [t]he district court inquired into Anfield's choice of counsel and was aware of appointed counsel's competence. Moreover, Anfield did not present any unique factors for his motion for continuance other than *his own lack of cooperation with appointed counsel*. Accordingly, the district court did not abuse its discretion in denying Anfield's motion for continuance.

*Id.* at 540 (emphasis added).

As for Anfield's guilty-plea voluntariness claim, the court noted his argument "that because the district court did not address his concerns about his representation, he was forced to choose between pleading guilty and going to trial with counsel he believed to be inadequate." *Id.* The *Anfield* panel then recounted Fed. R. Crim. P. 11's governing standards:

> Rule 11 provides that the court must address the defendant personally in open court and inform the defendant of, and determine that he understands, a list of 14 specific items, which include rights of the defendant and the consequences of a guilty plea. *See* Fed. R. Crim. P. 11(b)(1). In addition, the court must ensure that a plea is knowing and voluntary. Fed. R. Crim. P. 11(b)(2). "A court accepting a guilty plea must comply with Rule 11 and specifically address three core principles, ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005) (quotation omitted). Generally, failure to

3

address a Rule 11 core concern is plain error that affects a defendant's substantial rights.

*Anfield*, 237 F. App'x. at 540. Because the district judge addressed all of the core concerns (for example, it "ensur[ed] that Anfield was aware of and understood his rights under Rule 11, the nature of the charges, and the consequences of a guilty plea"), the appeals court also denied this claim. *Id.*

## II. ANALYSIS

### A. Governing Standards

"Under the procedural default rule, a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [he] is barred from presenting the claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). Accordingly, any grounds raised here that should have been raised on appeal are procedurally defaulted unless Anfield can establish cause and prejudice excusing his default (or establish his actual innocence of the crime). *Id.* at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000). It is well established that "constitutionally '[i]neffective assistance of counsel . . . is cause" for excusing a procedural default. *McCleskey v. Zant*, 499

4

U.S. 467, 494 (1991) (citations omitted). Construing his filings liberally, Anfield seems to argue ineffective assistance of counsel (IAC) as cause to excuse his defaulted claims.

Independent of that, Anfield raises IAC as an independent claim, which is not subject to default. *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("The better-reasoned approach is to permit [IAC] claims to be brought in the first instance in a timely motion in the district court under § 2255. We hold that an [IAC] claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

IAC claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984), which applies a two-part test for determining whether counsel's assistance was ineffective. First, the movant must demonstrate that his attorney's performance was deficient, which means showing that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial or guilty plea proceeding cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (*quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir.2000) (en banc).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375, (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d

1539, 1542 (11th Cir. 1983); *Willis v. United States*, 2009 WL 1765771 at * 2 (S.D.Ga. June 22, 2009).

Because many important rights are waived upon entry of a guilty plea, special IAC considerations apply to the guilty plea context. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Childs*, 2007 WL 4162926 at * 3 (M.D. Fla. Nov. 20, 2007). Under *Tollett*, a defendant who enters an unconditional plea of guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea," but he may attack the plea itself by showing that the advice he received from his counsel undermined "the voluntary and intelligent character of the plea." 411 U.S. at 267.

As noted above, Anfield contends that his counsel rendered ineffective assistance and thus her pre-plea advice fell below Sixth Amendment requirements. In determining whether counsel's advice undermined the plea, the Court relies upon *Hill v. Lockhart*, 474 U.S. 52 (1985), which advanced a slightly modified version of the ineffective assistance of counsel test first announced in *Strickland*, 466 U.S. 668. Where a defendant enters a plea of guilty, he must first demonstrate that

7

his attorney's performance was deficient, which requires a showing that counsel's advice regarding the plea was outside the "range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see Tollett*, 411 U.S. at 267. Second, the movant must demonstrate that the defective performance prejudiced the plea process to such a degree that the plea cannot be trusted. *Hill*, 474 U.S. at 59; *see also Stafford v. Duffey*, 2009 WL 3872041 at * 4 (S.D. Ga. Nov. 16, 2009); *Willis v. United States*, 2009 WL 1765771 at * 6 n. 11 (S.D.Ga. June 22, 2009). Stated differently, "it is defense counsel's duty to assist actually and substantially the defendant in deciding whether to plead guilty and to ascertain whether the plea is entered knowingly and voluntarily." *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (11th Cir. Unit B 1981). And

> [c]ounsel must be familiar with the facts and the law in order to advise the defendant meaningfully of the options available. *Calloway v. Powell*, 393 F.2d 886 (5th Cir.1968). This includes the responsibility of investigating potential defenses so that the defendant can make an informed decision. *Lee v. Hopper*, 499 F.2d 456 (5th Cir.1974). Counsel's advice need not be the best, but it must be within the realm of competence demanded of attorneys representing defendants in criminal cases at that time. *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Ballard v. Blackburn*, 583 F.2d 159 (5th Cir.1978).

*Bradbury*, 658 F.2d at 1087; *see also Tomas-Gostas v. United States*, 2009 WL 3232165 at * 3 (M.D. Fla. Sept. 30, 2009). Finally, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

### III. Anfield's Claims

#### A. Guilty Plea

Anfield first claims that his guilty plea was not knowing and voluntary because it was based on "grossly inaccurate advice" by his counsel "about actual time he would receive in prison." CV608-069, doc. 1 at 3. His attorney, Martha Kirkland, "promise[d]" him 80-168 months and yet he received 210. *Id.*; *see also* CR605-018, doc. 35 (original sentence of 210 months); doc. 61 (reduced on other grounds to 188 months). He does not, however, claim that she miscalculated his sentencing guidelines exposure, only that she "promised" him that sentencing range and yet that promise went unfulfilled. Anfield points to no sentencing guideline miscalculation, nor affirmatively claims (as is required) that he would not have accepted the plea agreement had

counsel forewarned him more fully of the consequences of his actions. *See Tollett*, 411 U.S. at 267; *Hill*, 474 U.S. at 59-60.

Any such allegation is unsupportable in light of the record, which shows that Anfield was expressly warned that he faced up to 50 years imprisonment and yet he chose to plead guilty anyway:

> Q [THE COURT]: Now, you want to know what sentence will be imposed. I can only tell you what I will look at. I have told you that. I don't know what sentence [sic] until I see the report I receive from the probation officer. [¶] You will see that report before I do. You and Ms. Kirkland have the right to review it. If he gets it wrong, I want you to tell me where he is wrong. If he will not agree to change it, then I will have a hearing. But make sure he is wrong before you challenge him. Do you understand that?
>
> A [Anfield]: Yes, sir.
>
> Q [THE COURT]: But whatever Ms. Kirkland has told you the sentence, her estimate, whatever other sources might have told you, they are giving you only their best guess. You understand that?
>
> A [Anfield]: Yes, sir.

CR605-18 doc. 42 at 37-38; *see also id.* at 33 ("[The Court] "Also, the maximum under your plea would be 50 years imprisonment, $2,250,000 fine, four years of supervised release, and $200 special assessment. That is the maximum I could go, which is a substantial period of time even then. You understand that. A. Yes, sir."). Finally,

"an inaccurate prediction about sentencing [prior to a guilty plea] will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel." *Knight v. United States*, 37 F.3d 769, 775 (1st Cir.1995); *see Calabrese v. United States*, 507 F.2d 259, 260 (1st Cir.1974) ("Generally the imposition of a sentence greater than that expected by a defendant, or predicted by his counsel is not adequate grounds for vacating the sentence under 28 U.S.C.A. § 2255").

*Morfin-Rodriguez v. United States*, 2009 WL 4728713 at * 6 (D. Mass. Dec. 2, 2009). Accordingly, Anfield's claim that his counsel was ineffective for advising him that at most he faced 168 months ("eighty months to fourteen years," doc. 1 at 3) is rejected.

Anfield next claims that Kirkland failed to inform him that "intent" was an element of the offense to which he was pleading. Doc. 1 at 5. Again, the record negates the prejudice showing that Anfield must make on this claim:

Q Do you understand what you are charged with, Mr. Anfield?

A Yes, sir.

Q I'm going to go over it very briefly with you as I'm required to. You are charged with possession with *intent* to distribute five or more grams of crack cocaine, possession with *intent* to distribute marijuana, possession of a firearm in furtherance of a drug-trafficking crime, possession of a firearms and ammunition by an convicted felon, and aiding and abetting. Those are the charges in four counts, four different charges?

A Yes, sir.

11

THE COURT: What is he pleading guilty to, counsel?

MS. GREENWOOD: Counts 1 and 4.

Q All right. So, you are pleading guilty to possession with the *intent* to distribute five grams or more of cocaine base, and possession of firearms and ammunition by a convicted felon. Is that what you are pleading guilty to, Mr. Anfield?

A Yes, sir.

Doc. 42 at 37-38 (emphasis added); *see also id.* at 34 ("Q . . . Well, the government must prove on the first count that you had this crack cocaine as charged in the indictment, that you willfully possessed, and they have to prove that it was you, your identity. The second thing they would have to prove is that you had it with the *intent* to distribute it, to give it away, pass it on, or sell it, whatever. It doesn't make any difference. A Yes, sir.") (emphasis added). The district judge explained "intent" to Anfield, and Anfield had the opportunity to halt the Rule 11 proceedings, not plead guilty, and instead go to trial. He elected to plead guilty. He thus cannot now show that he was prejudiced by his counsel's alleged failure to explain the "intent" element to him (i.e., that the government, as the Rule 11 judge explained, would have to prove that Anfield intended to

commit the acts alleged in the indictment). And again, he nowhere claims in his moving papers that he would not have pled guilty had he been advised differently on that score.

To the contrary, Anfield admitted on the record that he had committed the crime and that his plea was voluntary and intelligent. Doc. 42 at 50. Anfield's "solemn declarations" before the district judge "carry a strong presumption of verity" and rightly constitute a "formidable barrier" for him to overcome in these collateral proceedings. *Cross v. United States*, 2009 WL 211418 at * 8 (S.D. Ga. Jan. 27, 2009) (unpublished) (*quoting Blackledge v. Allison,* 431 U.S. 63, 74 (1977)). His allegations here simply do not overcome that presumption. *See, e.g., Byrd v. United States*, 2008 WL 4326533 at * 3 n. 5 (S.D. Ga. Sept. 22, 2008) (unpublished).

Next, Anfield complains that Kirkland failed to undertake a pre-plea (not pre-sentencing) investigation and otherwise prepare his case for trial. More specifically, he insists, she

> failed to motion to [subpoena Anfield's] witnesses as he requested: . . . his mother, wife, and daughter [and thus, this failure violat[ed] his Six[th] Amendment right [as] guaranteed [to him] by the Constitution. Counsel failed to investigate the ATF witness, failed

13

to object to answer on page 51 paragraph 17 and 20,[1] failed to interrogate the confidential informant to see if the testimony that was given was credible for the police to have probable cause to investigate him. [Kirkland also failed to] motion the court to test the drugs to see if they were real and the actual weight [claimed by the prosecution], and no lab report was given. Counsel failed to investigate the arresting officer's and see why his *Miranda* rights were not read to him when he was placed under arrest.

Doc. 1 at 5 (footnote added).

Counsel also failed, Anfield contends, to (a) seek his psychiatric evaluation after he had told her that he had been in a bad car wreck and thus was perhaps mentally incompetent; (b) move to suppress evidence against him (1) "to see if there was a validated search warrant" -- a copy was not left at his residence or given to him following agents' search of same; (2) because there was no court order authorizing the tapping of his phone; and (3) because he was not *Mirandized* when in custody and questioned. Doc. 1 at 6. Put another way, Anfield argues, his attorney failed to investigate and litigate his defense to the point where he felt he had a meaningful assessment of the strength of the government's case against him. Because she failed to do so, he felt he had no choice but to plead guilty. Doc. 1; *see also* doc. 2 (recounting same conclusory assertions in affidavit form).

---

[1] Anfield does not identify what document he is referencing here.

This portion of Anfield's § 2255 motion is flawed outright. First, conclusory claims (e.g., that if only counsel had investigated this or that defense possibility, things would now be different) go nowhere:

> Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11 Cir.1991) (recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible' ") (citation omitted)); *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5 Cir.1983). *See also, e.g., Panuccio v. Kelly*, 927 F.2d 106, 109 (2 Cir.1991) (a defendant's testimony after the fact suffers from obvious credibility problems). Moreover, bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record *and* are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. *See United States v. Ammirato*, 670 F.2d 552 (5 Cir.1982); *United States v. Sanderson*, 595 F.2d 1021 (5 Cir.1979); *King v. United States*, 565 F.2d 356 (5 Cir.1978); *Clayton v. Estelle*, 541 F.2d 486 (5 Cir.1976).

*Ivanovic v. McNeil*, 2010 WL 520601 at * 13 n. 3 (S.D. Fla. Feb. 10, 2010) (emphasis added); *McKay v. United States,* 2009 WL 3151178 at * 2 (S.D. Ga. Sept. 30, 2009); *Tomas-Gostas*, 2009 WL 3232165 at * 4 n. 1. For that matter, Anfield offers no specific, non-conclusory instances of faulty pre-plea advice from counsel. Second, because Anfield

> accepted a plea in the subject case, [he thus] chose to forego his right to go to trial and waived any and all rights he may have had to challenge his convictions and sentences. The traditional rule is that a defendant's plea of guilty made knowingly, voluntarily, and

15

> with the benefit of competent counsel, waives all nonjurisdictional defects in the proceedings. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (noting that a guilty plea represents a break in the chain of events which had preceded it in the criminal process); *United States v. Broce*, 488 U.S. 563 (1989). *See also Barrientos v. United States*, 668 F.2d 838, 842 (5 Cir.1982). The waiver also extends to claims of ineffective assistance of counsel that do not attack the voluntariness of the guilty plea. *See Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5 Cir.1981), *cert. denied*, 456 U.S. 992 (1982). *See also United States v. Bohn*, 956 F.2d 208, 209 (9 Cir.1992) (per curiam) (holding that pre-plea ineffective assistance of counsel claims are also waived by guilty plea). Exceptions to the general rule are those cases which are constitutionally infirm because the government has no power to prosecute them at all, which is not applicable to this case. *See Broce*, 488 U.S. at 574-575. Thus, a voluntary guilty or no contest plea constitutes a waiver of all non-jurisdictional defects in the proceeding up to that point. [Anfield's] claims challenging the representation of counsel with regard to the investigation and pursuit of possible defenses to the crimes committed do *not* relate to the voluntariness of the plea. They are therefore waived by the entry of the guilty pleas.

*Ivanovic*, 2010 WL 520601 at * 11 (emphasis added). That is, by pleading guilty, Anfield "has waived any claim of pre-plea ineffectiveness. *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived)." *Tomas-Gostas*, 2009 WL 3232165 at * 6. So, all of Anfield's claims regarding his lawyer's pre-plea ineffectiveness are now barred.

### B. "Race" and "Recusal" Claims

Beyond his IAC claims Anfield complains that the sentencing judge made a racial comment warranting his recusal. Movant then blends back

16

into this argument his earlier claim (which, again, is rejected) that the district judge should have granted him a continuance:

> On the record, the judge compared the Petitioner to a "a wild boar hog walking out in the forest," and told him he would get him off the street from producing more children that taxpayers have to support." [Doc. 42] at 8. This was a racial comment by the judge which calls for grounds for recusal. The statement he made to the Petitioner about being indigent, and denying the motion for Continuance was frivolous because the fact that the Petitioner was indigent doesn't mean that his family and friends couldn't make the proper steps to raising money to hire a lawyer. The judge had a duty to ensure that the Petitioner receives effective assistance of counsel[,] *United States v. Malekzadeh*, 855 F.2d. 1492, 1498 ( 11th Cir. 1988).

Doc. 1 at 7-8.

These claims are procedurally defaulted and Anfield shows no cause and prejudice to overcome that default. Even if not defaulted, they would be rejected outright. Delving into and commenting on Anfield's sexual recklessness[2] was within the prerogative of the district judge, and

---

[2] The Rule 11 judge asked Anfield the following series of questions:

> Q  Are you married?
> A  No, sir.
> Q  Have you ever been married?
> A  No, sir.
> Q  Do you have any children?
> A  Yes, sir.
> Q  How many children do you have?
> A  Fourteen, sir.
> Q  Give me the names, the ages, and the mothers' name?

17

Anfield has not shown that his race was a motivating factor in some judicial action adverse to him (for the judges' comments are applicable to all defendants of all races who beget more than a dozen children and support none of them). As Anfield has not shown that the judge's inquiry somehow rendered his guilty plea defective, his "failure to recuse" and "racial" claims are baseless.

Accordingly, Jimmy Anfield's 28 U.S.C. § 2255 motion, doc. 1, should be **DENIED**. And his motion for leave to proceed *in forma*

---

A  Ericka, Sharon, Brandy, Matty, Jamie, Mill, Jasmine, Lorraine, Jessica, Jacob, Craig, Rockelle.
Q  How many of them are girls?
A  I've got eight girls and six boys.
Q  How many different women produced these children?
A  Seven.
Q  When are the women's name?
A  Frieda, Diane, Stant, Bernice, Willie Mae, Doris, and --
Q  Who supports these children?
A  Well, me and disability was.  But my disability is cut off right now.
Q  You know, that it is completely irresponsible to bring fourteen illegitimate, bastard children into the world; don't you?
A  Yes, sir.
Q  Just like a boar hog walking out in the forest.  If nothing else good will come, I will get you off the street from producing more children that the taxpayers have to support.  Do you understand that?
A  Yes, sir.
Q  I take no pride in you bringing fourteen children in the world, and one, th[ey] are not legitimate, and two, somebody else has to support them. Now, how much formal education do you have?
A  Ninth.

Doc. 42 at 7-8.

*pauperis*, doc. 1 at 26, is **DENIED** as moot because § 2255 motions require no filing fee.

**SO REPORTED AND RECOMMENDED** this  23rd  day of March, 2010.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA